UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BRYAN HUMPHREY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18 CV 190 ACL |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Deputy Commissioner of Operations, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM**

Plaintiff Bryan Humphrey brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Humphrey's severe impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be reversed and remanded.

## I. Procedural History

Humphrey filed his applications for benefits on August 9, 2011, claiming that he became unable to work on August 10, 2009. (Tr. 249-50, 251-57.) In his Disability Report, Humphrey alleged disability due to diabetes, depression, back pain, foot and leg pain, tremors, ringing in ears, dizzy spells, double vision, heartburn, and nausea. (Tr. 325.) Humphrey was 38 years of age at the time of his alleged onset of disability. His applications were denied initially. (Tr. 59-60.) Humphrey's claims were denied by an ALJ on April 1, 2013, following a hearing. (Tr. 61-78.) The Appeals Council remanded the case for further proceedings before an ALJ on February 7, 2014. (Tr. 79-84.) Following another hearing, Humphrey's claims were denied in a written opinion by an ALJ, dated October 16, 2014. (Tr. 85-106.) The Appeals Council remanded the case again on January 20, 2016. (Tr. 107-10.)

A third hearing was held on July 1, 2016. (Tr. 1770-1804.) The ALJ issued an unfavorable decision on December 9, 2016. (Tr. 15-27.) On December 5, 2017, the Appeals Council denied Humphrey's request for review. (Tr. 1-6.) Thus, the December 9, 2016 decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Humphrey first argues that the ALJ erred "by failing to provide a proper analysis of Humphrey's ability to perform other work at step five of the sequential evaluation process." (Doc. 17 at 13.) He next argues that the ALJ's RFC is not supported by substantial evidence "in that it conflicts with the opinions of Dr. Burchett and Dr. Spencer and the ALJ failed to explain why he did not include limitations from those opinions as required by SSR 96-8p." *Id.* at 17.

## II. The ALJ's Determination

The ALJ first found that Humphrey met the insured status requirements of the Act through December 31, 2013. (Tr. 17.) The ALJ also found that Humphrey had not engaged in substantial gainful activity since August 10, 2009, the alleged onset date. *Id.* In addition, the ALJ concluded that Humphrey had the following severe impairments: diabetes mellitus with neuropathy; diabetic retinopathy; depression and anxiety, NOS; obesity; right upper extremity osteoarthritis; and degenerative disc disease of the cervical spine. (Tr. 18.) The ALJ found that Humphrey did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. *Id.*

As to Humphrey's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: lifting more than 10 pounds frequently and 20 pounds occasionally and sitting, standing and walking six hours total in an eight-hour workday. The claimant must avoid climbing ropes, ladders and scaffolds, working at unprotected heights, working with or around hazardous machinery and operating foot controls bilaterally. The claimant must avoid working above shoulder level bilaterally and walking on unimproved terrain. The claimant must avoid exposure to extreme heat or cold. He would be limited to no more than occasionally climbing ramps and stairs, stooping, kneeling, crouching and crawling. Jobs that require handling and fingering more than frequently and jobs that require working with objects smaller than a shirt button. The claimant would be further limited to performing no more than simple repetitive tasks and jobs that do not require close interaction with the public.

(Tr. 20.)

The ALJ found that Humphrey was unable to perform any past relevant work, but was capable of performing other jobs existing in significant numbers in the national economy, such as

larger item packager, production worker, and assembler. (Tr. 26-27.) The ALJ therefore concluded that Humphrey was not under a disability, as defined in the Social Security Act, from August 10, 2009, through the date of the decision. (Tr. 27.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits filed on August 9, 2011, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income protectively filed on August 9, 2011, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

*Id.*

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**III.B. Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to

supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in

the regulations.  *See id.*  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.  *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or his age, education, and work experience.  *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000).  The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. § 416.920(a)(4)(v).  At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.  The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists.  *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).  If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2).  The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work:  activities

of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

Humphrey first challenges the ALJ's step five determination. He argues that the ALJ erred in relying on the vocational expert ("VE") testimony that was in conflict with the *Dictionary of Occupational Titles* ("DOT").

At step five of the sequential analysis, the burden shifts to the Defendant to establish that a claimant maintains the RFC to perform a significant number of jobs in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Defendant may satisfy her burden by eliciting testimony by a vocational expert (VE) based upon hypothetical questions that "set forth impairments supported by substantial evidence on the record and accepted as true and capture the concrete consequences of those impairments." *Jones v. Astrue*, 619 F.3d 963, 972 (8th Cir. 2010) (quoting *Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 365 (8th Cir. 2007)).

A VE's testimony should generally be consistent with the DOT. SSR 00-4P, 2000 WL 1898704 (SSA Dec. 2000). "When conflicts arise, an ALJ must resolve conflicts between the testimony and the DOT 'by determining if the explanation given by the [vocational expert] is reasonable and provides a basis for relying on the [VE] testimony rather than on the DOT information.'" *Stamper v. Colvin*, 174 F. Supp. 3d 1058, 1064 (E.D. Mo. 2016) (quoting SSR 00-4P).

The ALJ found Humphrey had the RFC to perform light work with additional limitations, including a restriction to "avoid working above shoulder level bilaterally." (Tr. 20.) When the ALJ posed a hypothetical to the VE consistent with this RFC, the VE testified Humphrey could perform other jobs, such as larger item packager, production worker, and assembler. (Tr. 1796-97.) Humphrey notes that the packager and production worker positions require constant reaching, and the assembler position requires frequent reaching. *See* DICOT 920.685-026, 1991 WL 687929 (packager); DICOT 794.687-042, 1991 WL 681324 (production worker); DICOT 691.685-018, 1991 WL 678654 (assembler). He argues that the ability to reach frequently or constantly is inconsistent with the ALJ's RFC limiting him to no work above shoulder level bilaterally.

Humphrey cites *Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014), and *Kemp ex. rel. Kemp v. Colvin*, 743 F.3d 630, 632-33 (8th Cir. 2014), for the proposition that a VE's failure to explain inconsistencies between the DOT and the VE's testimony is reversible error. When eliciting VE testimony, "the ALJ has an affirmative responsibility to ask about any possible conflict between VE evidence and the DOT. . .on the requirements of a job or occupation before relying on VE evidence to support a determination of not disabled." *Kemp*, 743 F.3d at 633 (internal quotations and footnotes omitted); *see also Moore*, 769 F.3d at 990 ("The ALJ is not

absolved of this duty [to ask about conflicting testimony] because the VE responds 'yes' when asked if her testimony is consistent with the DOT."); SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000) (mandating that an ALJ elicit a reasonable explanation for any conflict before relying on VE evidence to support a disability determination). "Absent adequate rebuttal. . .VE testimony that conflicts with the DOT 'does not constitute substantial evidence upon which the Commissioner may rely,'" *Moore*, 769 F.3d at 990 (citing *Kemp*, 743 F.3d at 632), to meet the burden of proving a claimant can perform other work.

In *Moore,* the claimant argued that the ALJ erred in finding he could perform two jobs identified by a VE when they required frequent reaching and the ALJ's RFC limited him to occasional overhead reaching bilaterally. The Court noted that the DOT's listing for each job required frequent reaching without specifying the direction of reaching. *Id.* The Court found that the VE did not adequately explain the inconsistency between the ALJ's RFC and the DOT's description and remanded the case. *Id.* Similarly, in *Kemp*, the Court found that the ALJ had not fulfilled his affirmative responsibility to ask about a possible conflict between the VE's testimony and the DOT when the VE testified that the claimant could perform the work of a check-weigher although the DOT defined that job as requiring constant reaching and the ALJ limited the claimant to only occasional overhead reaching. 743 F.3d at 632-33. The Court noted that "reaching" is defined in Appendix C to the SCO as "extending the hands and arms in any direction." *Id.* at 632. The "apparent conflict" was "not resolved on the record." *Id.*

Defendant argues that the ALJ satisfied his duty under SSR 00-4p because he questioned the VE about the functional activities of the jobs identified "regardless of the DOT." (Tr. 1799.) Defendant refers to the following exchange:

> [ALJ]: Okay. Now when you sat at the light level packers and wrappers, the DOT code at 920.685-026, you say that's a representative DOT code. Are all like 9-2-0 DOT codes packers and/or wrappers or—
> [VE]: Well, it, it is representative and it's really a microcosm, just a—in effect a subset of a much larger number of packers. So these could be bulk packers, these could be all—these could be a whole host of names and so it's only one DOT and, oh, it was a larger category which is called OEM.
> 		That is the occupational employment statistics but, yes, they—what they share in common is that it all meets those criteria of light in terms of the use of the hands. All of those stipulations these numbers conform to, though they have different titles and in some cases, and in many cases, different DOT's within that subset.
> [ALJ]: Okay. The—so basically these jobs that you cite are basically jobs where a person either stands at a table or a line and either puts something in something or attaches something to something or picks something up and inspects it, something like that?
> [VE]: Yes, in the light category; now, of course, the sedentary category they're seating—sitted [sic]—sitting three-quarters of the day, lifting up to ten pounds, but essentially correct, yeah.
> [ALJ]: Okay. And *regardless of the DOT*, these are the functional activities of these jobs?
> [VE]: Yes, regardless of the DOT, that that DOT is just one representation of many that can be cited. So packers and others, there's so many names that could conform to that 20/10 lift, use of the hands but the job titles will be different and the DOT titles will be different. These are merely representative examples.

(Tr. 1798-99) (emphasis added).

The ALJ's questioning of the VE cited above did not resolve the apparent conflict between the VE's testimony and the DOT. Although the VE provided some description of the job duties of the packer and wrapper positions, he did not address whether the positions required working above shoulder level. The VE's testimony that the positions involve standing "at a table or a line and either put[ting] something in something or attach[ing] something to something or pick[ing] something up and inspect[ing] it" provides no insight into this issue.

The Court in *Moore* and *Kemp* addressed limitations in overhead "reaching" specifically, while the ALJ in the instant case limited Humphrey to no overhead "work." This is of no consequence because, as Humphrey points out, overhead "work" necessarily involves reaching overhead. Indeed, this Court has previously found that a similar limitation to "occasional

overhead *work* bilaterally" conflicted with jobs that DOT indicated required frequent or constant reaching. *See Houchins v. Berryhill*, Case No. 1:16CV24ACL, 2017WL1132344, * 6 (E.D. Mo. Mar. 27, 2017).

The undersigned finds that *Moore* and *Kemp* require remand in this case. Neither the VE nor the ALJ addressed how the restriction in Humphrey's RFC to "avoid working above shoulder level bilaterally" is compatible with the DOT descriptions of the jobs identified by the VE. Instead, the ALJ erroneously found that the VE's testimony was consistent with the DOT. (Tr. 27.) Consequently, the ALJ's step five finding is not supported by substantial evidence.

Humphrey next contends that the RFC formulated by the ALJ is not based on substantial evidence of record. Because this matter will be remanded to the Commissioner based on the ALJ's error at step five, the undersigned need not consider this additional argument. The ALJ should address the concerns regarding Humphrey's RFC on remand.

## Conclusion

For the reasons discussed above, the Commissioner's decision is not based upon substantial evidence on the record as a whole and the cause is therefore remanded to the Commissioner for further consideration in accordance with this Memorandum and Order. Upon remand, the ALJ shall formulate an RFC supported by substantial evidence, and resolve any conflicts between the DOT and the VE testimony at step five.

                                                 /s/ Abbie Crites-Leoni
                                                 ABBIE CRITES-LEONI
                                                 UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of March, 2019.